Opinion issued October 15, 2009
             
 



 







In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-08-00297-CR
____________

ROY DEAN RIVERS, JR., Appellant

v.

THE STATE OF TEXAS, Appellee




On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 1125639


 

MEMORANDUM OPINION
          A jury convicted appellant, Roy Dean Rivers, Jr., of aggravated assault with
a deadly weapon. See Tex. Penal Code Ann. § 22.02 (Vernon Supp. 2009). 
Appellant pleaded “true” to the two enhancement paragraphs, and the trial court
assessed punishment at 40 years in prison. Appellant contends that the State failed
to prove that the table leg used during the assault was a deadly weapon. We affirm.
Background
          Shortly after midnight, in the early hours of the morning on July 13, 2007,
Alphonsene Green was at her apartment home with her husband, Roy Dean Rivers,
Jr. (appellant), and Alphonsene’s three children: Brighton Green (age 12), Chelsea
Green (age 14), and Darrell Wiltz (age 17). Darrell was in the back bedroom
sleeping, and Alphonsene, Brighton, Chelsea, and appellant were in the front living
room. Alphonsene testified there was a “bunch of fussing” and “bickering” going on.
The arguing escalated, but then seemed to calm down. Alphonsene testified that
appellant was loosening the coffee table legs and he began to “mak[e] comments like
. . . ‘wamp,’ like he’s going to hit somebody on the top of the head.” Alphonsene did
not notice appellant’s behavior at first, so her daughter, Chelsea, sent Alphonsene a
text message conveying her concern that appellant was going to hit Alphonsene with
the coffee table leg. 
          Tired of the threats, Alphonsene walked outside on the porch to call the police. 
She dialed the phone but was unable to place the call because appellant took the
phone away from her. Alphonsene went back into the apartment, and the situation
continued to escalate. Once inside the apartment, appellant removed a leg from the
coffee table and started beating Alphonsene with it. Chelsea and Brighton were in
the room, witnessing their mother being beaten. Alphonsene cried to her children to
wake their older brother, Darrell, and call 911. At trial, Alphonsene could not recall
how many times appellant hit her, explaining her lack of memory could be because
she was hit in the head or she may have “blanked it out.” Alphonsene did testify,
however, that appellant hit her with the table leg on her head, shoulders, arm, and
side.
          Darrell was asleep and woke up when his sister, Chelsea, came into his room 
screaming. Darrell could hear his mother and little brother screaming in the
background and went straight to the living room. Darrell saw his mother lying on the
floor “almost in a fetal position” trying to protect herself and appellant standing over
her holding a table leg. At trial, Darrell described the table leg as wooden and about
a foot-and-a-half or two feet long that appellant had pulled off of the coffee table.


 
Darrell stated the leg had a small metal piece sticking out of one of the ends where
it would attach to the table. Appellant was holding onto the end that sits on the
ground. 
          When Darrell walked into the room, appellant hit him in the head with the table
leg, “stunn[ing] [him].” Darrell’s forehead was cut from the metal part of the table
leg hitting him. Darrell testified that, after being hit, “[he] just stood there and tried
to realize what was happening.” At trial, Alphonsene testified that she believed
appellant accidently hit Darrell, stating “Darrell proceeded to come out [into] the
living room and while Roy was hitting me, Darrell accidentally ran into the stick and
it hit Darrell in the head.”
          After hitting Darrell in the head with the table leg, appellant briefly tried to
“comfort [Darrell] and make sure [he] was alright[.]” Then, appellant went after
Alphonsene again. Appellant traded the table leg he was using for a steak knife, and
tried to swing at Alphonsene with the knife. Darrell testified he was not sure whether
Alphonsene was actually stabbed with the knife. After shaking off being hit in the
head, Darrell picked up the table leg and began to approach appellant with it, but
appellant ran out the door of the apartment. The apartment was left in a state of
disarray after the incident, with damage to the walls, windows, door, and coffee table. 
Darrell testified there were puncture holes in the walls from the table leg.
          Darrell testified that he suffered a head injury from being struck by appellant
with the table leg. Darrell said his head was bleeding and left a scar on his forehead. 
Alphonsene testified that she was bleeding from her head, her shoulder was swollen,
and her arm was “messed up” and had scratch marks. At trial, Alphonsene reported
she was still in pain on her right side. Alphonsene testified that appellant hit her on
her right side, and she mentioned that she had been in a car accident with appellant
prior to this incident, injuring her right side. Alphonsene testified that multiple table
legs were used by appellant during the incident. She testified, “When one would
break, he would take another one off the table.” She testified that appellant used
about three of the table legs. 
          Deputy Stephen Lee Herrmann with the Harris County Sheriff’s Department
was dispatched to the apartment and arrived around 1:24 a.m. Deputy Hermann
testified that he observed the front door open and saw blood both inside and outside
the door and on the molding. He observed a 12-inch kitchen knife on the ground just
outside the door. Deputy Hermann observed blood on the knife. He heard loud
arguing or yelling inside. When he looked inside, he observed Alphonsene holding
her arm. Deputy Herrmann described Alphonsene as “very excited” and “upset.” 
Deputy Hermann testified that “there was a lot of damage in the apartment” and “the
living room looked like they just had a big old brawl.” He testified that the coffee
table was broken into several pieces and glass was on the floor. By the time Deputy
Hermann arrived, appellant had fled the scene but Alphonsene and her three children
were present. He observed Darrell lying on the couch with a towel on his head. At
trial, Deputy Hermann testified that he observed lacerations on Alphonsene’s right
arm. He described her demeanor as frightened and upset. Deputy Herrmann recalled
that she was screaming, “Where is EMS? . . . My son is injured.” Deputy Herrmann
testified that, based on his investigations, he believed an assault had occurred. No
photos were taken of the scene and no evidence was tagged. 
          On February 12, 2008, Alphonsene signed an “Affidavit of Nonprosecution.” 
The document, as it was presented at trial, claimed that no weapon, no table leg, and
no knife were used by appellant during the incident. However, at trial, Alphonsene
explained that appellant’s mother brought the document to her for her to sign,
indicating “it would help [appellant] get less time.” Appellant’s mother was taking
care of Alphonsene’s children and her health was deteriorating. Because of her health
problems, appellant’s mother was becoming unable to care for the children. 
Alphonsene said she felt pressured to sign the affidavit, explaining that she was “just
tired and just didn’t want to be bothered anymore.” Alphonsene testified she signed
the document because she felt sorry for appellant’s mother and not because she felt
sorry for appellant or wanted the case to be dismissed. Alphonsene admitted it was
her signature on the affidavit, but she testified that although she remembered the
document saying that “no knife” was used, she did not remember it saying that “no
table leg” was used. She testified she was not sure whether the document was altered
after she signed it.
          Appellant did not testify or present any witnesses or evidence in his defense.
Discussion
          In his only issue on appeal, appellant contends the State failed to prove that a
table leg is a deadly weapon, as required to support a conviction of aggravated assault
with a deadly weapon. See Tex. Penal Code Ann. §§ 1.07(a)(17), 22.02(a)(2)
(Vernon Supp. 2009)
A.      Standard of Review
          In our legal-sufficiency review, we view the evidence in the light most
favorable to the verdict and ask whether any rational trier of fact could have found
the crime’s essential elements beyond a reasonable doubt. Johnson v. State, 23
S.W.3d 1, 7 (Tex. Crim. App. 2000). In our factual-sufficiency review, we view all
the evidence in a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim.
App.1997). We will set aside the verdict for factual insufficiency only if (1) the
evidence is so weak that the verdict is clearly wrong and manifestly unjust or (2) the
proof of guilt is against the great weight and preponderance of the evidence. 
Johnson, 23 S.W.3d at 11. Under the first prong of Johnson, we cannot conclude
that a conviction is “clearly wrong” or “manifestly unjust” simply because, on the
quantum of evidence admitted, we would have voted to acquit had we been on the
jury. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the
second prong of Johnson, we also cannot declare that a conflict in the evidence
justifies a new trial simply because we disagree with the jury’s resolution of that
conflict. Id. Before finding that evidence is factually insufficient to support a verdict
under the second prong of Johnson, we must be able to say, with some objective basis
in the record, that the great weight and preponderance of the evidence contradicts the
jury’s verdict. Id. In our factual-sufficiency review, we must also discuss the
evidence that, according to the appellant, most undermines the jury’s verdict. Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
          The fact-finder alone determines the weight to be given contradictory
testimonial evidence because that determination depends on the fact-finder’s
evaluation of credibility and demeanor. Cain, 958 S.W.2d at 408-09. As the one
who determines of the credibility of the witnesses, the fact-finder may choose to
believe all, some, or none of the testimony presented. Id. at 407 n.5; see also Lancon
v. State, 253 S.W.3d 699, 705-07 (Tex. Crim. App. 2008).
B.      Deadly Weapon
          Under the variant of the offense of aggravated assault with which appellant was
charged and convicted, a person commits an offense if he commits an assault and
“uses or exhibits a deadly weapon during the commission of the assault.” See Tex.
Penal Code Ann. § 22.02(a)(2) (Vernon Supp. 2009). A weapon can be deadly by
design or by the manner in which it is used. Id.§ 1.07(a)(17)(A), (B). The object used
in this case, a table leg, is not a deadly weapon by design. See McCain v. State, 22
S.W.3d 497, 502-03 (Tex. Crim. App. 2000) (stating that an object that has an
obvious purpose apart from causing death or serious bodily injury cannot be a deadly
weapon by design). An object is deadly weapon by usage if “in the manner of its use
or intended use,” the object “is capable of causing death or serious bodily injury.” 
Tex. Penal Code Ann. § 1.07(a)(17)(B) (Vernon Supp. 2009); McCain, 22 S.W.3d
at 503. “Serious bodily injury” is defined as “bodily injury that creates a substantial
risk of death or that causes death, serious permanent disfigurement, or protracted loss
or impairment of the function of any bodily member or organ.” Tex. Penal Code
Ann. § 1.07(a)(46) (Vernon Supp. 2009). However, the statutory definition of
“deadly weapon” does not require that death or serious bodily injury be inflicted or
even intended by the actor. McCain, 22 S.W.3d at 503. 
          The placement of the word “capable” is crucial to determining deadly-weapon
status. Tucker v. State, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008). The State is
not required to show that the “use or intended use causes death or serious bodily
injury,” but that the “use or intended use is capable of causing death or serious bodily
injury.” Id. Even without expert testimony or a description of the weapon, the
injuries suffered by the victim can by themselves be a sufficient basis for inferring
that a deadly weapon was used. Id. at 691-92.
          The trial court may enter an affirmative finding that a deadly weapon was used
when a deadly weapon is pleaded in the indictment and the jury returns a verdict of
guilt as charged in the indictment. Polk v. State, 693 S.W.2d 391, 396 (Tex. Crim.
App. 1985). In this case, an affirmative finding of a deadly weapon was made
because the indictment alleged use of a “deadly weapon, namely, a table leg,” and the
jury returned a finding of guilt as charged in the indictment.
 
C.      Analysis
          On appeal, Appellant argues that the State failed to prove that the table leg in
question was a deadly weapon. Specifically, appellant argues that the State failed to
elicit either expert or lay witness testimony that the coffee table leg was a deadly
weapon. Furthermore, appellant argues that the State failed to ask any of the three
witnesses if the coffee table leg was capable of causing death or serious bodily injury.
          The jury heard testimony that, while Alphonsene was lying on the floor trying
to protect herself, appellant stood over her and used the wooden table leg like a club
to strike her repeatedly. Alphonsene testified that she was bleeding from her head,
her shoulder was swollen, and her arm was “messed up” and had scratch marks. The
apartment was left damaged, with puncture holes in the walls as a result of the attack. 
Darrell also found himself in the path of the table leg, resulting in a head injury. 
Darrell described it as a wooden table leg about a foot-and-a-half or two feet long that
appellant had pulled off of the coffee table. The leg was made of wood, with a metal
piece attached to the end where the leg attached to the table. Viewed in the light most
favorable to the verdict, the evidence adduced at trial is sufficient to show that the
table leg was used in a manner that was capable of inflicting serious bodily injury. 
See Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000)(setting out standard for
legal sufficiency). We hold the evidence is legally sufficient to support the finding
of use of a deadly weapon.
          Appellant, in support of his contention that the State failed to prove that the
table leg was a deadly weapon, argues that Deputy Hermann was not established as
an expert witness and never testified that the table leg could be used as a deadly
weapon. However, neither fact precludes the jury from finding that the coffee table
leg was a deadly weapon. As appellant admits in his brief, expert testimony is not
required. Tucker v. State, 274 S.W.3d 688, 691-92 (Tex. Crim. App. 2008) (holding
that even without expert testimony or a description of weapon, injuries suffered by
victim can by themselves be sufficient basis for inferring that deadly weapon was
used).
          The jury can find that an instrument is “capable of causing death or serious
bodily injury” by drawing an inference from the injuries sustained by the victim. Id.
When a wound is received in a vulnerable area, the jury may infer that there was
potential for causing serious bodily injury or death. Id. (citing Morales v. State, 633
S.W.2d 866, 867-69 (Tex. Crim. App. 1982) (holding that it is common knowledge
that the throat is a particularly vulnerable part of the body)). The jury heard
testimony that appellant used the table leg to hit Alphonsene in the head and on her
side, which was injured from a prior car accident. Alphonsene testified that appellant
was aware of her injury to her side from a car accident. Thus, a rational jury could
conclude the table leg was used in a manner that was capable of causing death or
serious bodily injury.
          Weighed in a neutral light, the evidence is not so weak that the verdict is
clearly wrong and unjust. Laster v. State, 275 S.W.3d 512, 518 (Tex. Crim. App.
2009). Also, there is no objective basis in the record to conclude that the great weight
and preponderance of the evidence contradicts the jury’s verdict. Watson v. State, 204
S.W.3d 404, 417 (Tex. Crim. App. 2006). We hold the evidence is factually
sufficient to support the finding of use of a deadly weapon.
Conclusion
          We affirm the judgment of the trial court.
                                                                                                      
                                                             
                                                             George C. Hanks, Jr.
                                                             Justice
 
Panel consists of Justices Keyes, Alcala and Hanks.
Do not publish. See Tex. R. App. P. 47.2(b).